UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY EDWARD CIAVONE,

        Plaintiff,

Case No. 1:08-cv-771

Hon. Robert J. Jonker

v.

KEN MCKEE, *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on the following: motion to dismiss filed by defendant Dr. Steven Meno (docket no. 23); motion to dismiss field by defendants John Dawdy and Marilyn Switzer (docket no. 37); motion for summary judgment filed by defendants James Armstrong, Kenneth McKee, Cathleen Stoddard, Scott Schooley, David Johnson, Ronald Carpenter, Candace Hull, Gretchen Walters, Deborah Drake, Larry Avery, Terry Bashore, Sean Smith and Edward Hunt (docket no. 54); and, motion to dismiss filed by defendant Kevin Corning (docket no. 63).

    **I.**    **Background**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff filed a 46-page complaint, consisting of 116-paragraphs of allegations against 20 defendants, and 117 pages of attachments. Plaintiff's complaint sues the following defendants in their official and individual capacities[1]: Bellamy Creek Correctional Facility (IBC) Warden Ken McKee; Assistant Resident Unit Supervisor (ARUS) Deborah Drake; Grievance Coordinator Ronald Carpenter; Assistant Deputy Warden (ADW) David Johnson; Nurse Kevin Corning; Steve Meno; David Dawdy; Marilynn Switzer; RN Akaz; ARUS Larry Avery; Resident Unit Manager (RUM) Candace Hull; Deputy Warden Catherine Stoddard; ADW Scott Schooley; Acting Grievance Coordinator Sean Smith; Resident Unit Officer (RUO) Terry Bashore; Edward Hunt[2]; MDOC Grievance and Appeals Section Manager James Armstrong; RN R. Meno; NP Val Hammond; and ARUS Gretchen Walters. Neither defendant Akaz nor defendant R. Meno have been served with a summons and complaint in this action.

Plaintiff's complaint sets forth seven counts. In Count I, plaintiff alleged that defendants Corning, Akaz, Armstrong, McKee, R. Meno, Hunt, Bashore, Avery, Hull, Stoddard, Carpenter, Johnson and Hammond violated his rights under the Eighth Amendment and Mich Const art 1, § 16, with respect to the treatment of his undescended testicles, testicular pain, testicular rashes, and injuries to his ankle and knee sustained when he fell from a bunk.

---

[1] The docket sheet reflects that defendants are being sued in their individual capacity. The Clerk's Office should correct the docket sheet to reflect that defendants are being sued in both their official and individual capacities.

[2] At all times relevant to plaintiff's complaint, Mr. Hunt was employed as the Acting Associate Health Administrator for MDOC's Region II Health Care Services.

In Count II, plaintiff alleged that defendants Dawdy, Switzer, S. Meno, Carpenter, Avery, Bashore, Walters and Hull violated his rights under the Eighth Amendment and Mich Const art 1, § 16, for failing to treat his psychological needs.

In Count III, plaintiff alleged that defendants McKee, Carpenter, Johnson, Armstrong, Hull, Avery, Smith and Stoddard violated his rights under the Fourteenth Amendment and Mich Const art 1, § 17 to access the courts.

In Count IV, plaintiff alleged that defendants Walters and Drake violated his rights under the Eighth Amendment and Mich Const art 1, § 16, by failing to provide him with a new pillow and failing to replace his mattress in a timely manner.

In Count V, plaintiff alleged that defendants Avery, Hull, McKee, Schooley, Armstrong and Stoddard violated his rights under the Eighth Amendment and Mich Const art 1, § 16, as well the equal protection clause when they allowed Avery to "intimidate, humiliate, belittle, insult, scream and curse violently" at him.

In Count VI, plaintiff alleged that all defendants engaged in "intentional, deliberate, and wanton infliction of mental torture and emotional distress."

In Count VII, plaintiff alleged that he will continue to suffer irreparable injury unless the court grants injunctive relief, which includes a bottom bunk detail, stronger pain relievers than the 325 mg Tylenol prescribed to him, a prohibition against being given Motrin, "psychological therapy and treatment," and unspecified "medical attention for his testicular infections and pains."

Plaintiff seeks compensatory damages and punitive damages.

## II. Motions to dismiss

### A. Legal Standard

Defendants Dr. Steven R. Meno, John Dawdy, Marilyn Switzer and Kevin Corning seek to dismiss plaintiffs' action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Motions to dismiss filed by Dr. Meno (docket no. 23), and, John Dawdy and Marilyn Switzer (docket no. 37)

#### 1. Identification of these defendants

Plaintiff's complaint is rather confusing in identifying these three defendants. In their respective motions to dismiss, Dr. Steven Meno states that he has a Ph.D. in psychology and is the Director for the Western Region of the MDCH's Corrections Mental Health Program; Mr. John

4

Dawdy states that he has a master's degree in psychology and is the Unit Chief of the IBC Outpatient Mental Health Program; and Marilyn Switzer states that she has a master's degree in nursing and is the Unit Chief of Residential Treatment Program #3 at Hanlon Correctional Facility in Ionia. *See* docket nos. 23 and 37. All three defendants state that at all times relevant to this action, they were employed by the Michigan Department of Community Health (MDCH). *Id.*

In addition, plaintiff's complaint refers to two defendants named Meno, i.e., "Steve Meno, Grievance Coordinator" and "R. Meno, RN." Defendant "R. Meno, RN," who was identified in the summons as "R. Meno, Corrections Officer," has not been served. *See* docket no. 15. Dr. Meno states that while he is neither a grievance coordinator nor a registered nurse, he is presumably the person named "Meno" referenced in the complaint. Plaintiff does not dispute Dr. Meno's statement. Accordingly, the court should strike "R. Meno" as a defendant in this action.

### 2. Discussion

In their motions, Dr. Meno, Mr. Dawdy and Ms. Switzer characterize plaintiff's claims against them as limited to allegations pertaining to the allegedly inadequate pain medication used to treat plaintiff's testicular infections and undescended testicles. In his responses to the motions, plaintiff acknowledges that these three defendants played no role in his "physical health," but that they failed to treat his psychological problems. Contrary to defendants' characterization of the complaint, the court notes that plaintiff has alleged a history of severe mental illness and that Dr. Meno, Mr. Dawdy and Ms. Switzer violated the Eighth Amendment when they failed to provide for his psychiatric needs and denied him psychological therapy. *See* Compl. at ¶¶ 47-49, 77.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel

5

and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff has alleged sufficient facts which, accepted as true, state an Eighth Amendment claim against Dr. Meno, Mr. Dawdy and Ms. Switzer "that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Accordingly, defendants' motions to dismiss should be denied with respect to Count II, the Eighth Amendment claim for failure to provide psychological treatment. Because plaintiff has clarified that the claims against these defendants are limited to their alleged deliberate indifference to his mental health, the court should grant defendants' motion to dismiss all claims asserted in Count I.

### C. Motion to dismiss filed by Kevin Corning (docket no. 63)

Plaintiff alleged that defendant Corning, a registered nurse at the Riverside Correctional Facility (RCF): failed to adequately investigate plaintiff's medical complaints; is liable for "dereliction of duty" for failing to read plaintiff's medical records; misled plaintiff and MDOC medical staff by stating that plaintiff's testicular problem was not mentioned in his intake history; denied plaintiff medical care for failing to investigate plaintiff's testicular pain; offered inaccurate medical instructions to alleviate the pain; scared plaintiff; and failed "to adhere to the medical policies, procedures, edicts and practices that were established and implemented within [the] MDOC." Compl. at ¶ 15.

Defendant Corning's motion to dismiss is unopposed. *See* W.D. Mich. LCivR 7.2(c) ("Any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and supporting materials"). Because plaintiff failed to respond to the motion, he is deemed to have waived any opposition to the motion. *Humphrey v. U.S. Attorney General's Office*, 279 Fed.Appx. 328, 331 (6th Cir. 2008). *See Burdick v. Anthony*, No. 1:06-cv-2687, 2007 WL 275968 at *1 (N.D. Ohio Jan. 26, 2007) ([t]he district court's power to grant

7

motions to dismiss because they are unopposed is firmly settled"). Although plaintiff is a *pro se* litigant, he is still "required to follow the rules of civil procedure and easily-understood Court deadlines." *Mooney v. Cleveland Clinic Foundation*, 184 F.R.D. 588, 590 (N.D. Ohio 1999). *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) ("*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record"). A *pro se* litigant is required to follow the law, and assumes the risks and hazards that accompany self-representation. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.2d 552, 561 (6th Cir. 2000). Accordingly, Mr. Corning's unopposed motion to dismiss will be granted as to Count I.

> **III. Motion for summary judgment filed by defendants McKee, Johnson, Smith, Carpenter, Stoddard, Armstrong, Schooley, Hull, Walters, Bashore, Drake, Avery and Hunt (docket no. 54).**
>
> **A. Legal standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### B. Qualified Immunity

Defendants seek summary judgment on the basis of qualified immunity. Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity

9

involves a two-fold inquiry:

> First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . [T]he next, sequential step is to ask whether the right was clearly established."

*Barber v. Overton*, 496 F.3d 449, 453 (6th Cir. 2007), quoting *Saucier*, 533 U.S. at 201.

### C. Defendants Armstrong, McKee, Stoddard, Schooley, Johnson, Carpenter, Hull, Smith and Hunt

These nine defendants did not participate in plaintiff's medical treatment and had no personal contact with him. Plaintiff's claim against these defendants is that they responded to plaintiff's grievances at either Step I, Step II or Step III. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care"). The facts alleged, when viewed in the light most favorable to plaintiff, fail to show a constitutional violation by any of these nine defendants. Defendants Armstrong, McKee, Stoddard, Schooley, Johnson, Carpenter, Hull, Smith and Hunt are entitled to summary judgment on their claim of qualified immunity.

### D. Defendants Walters and Drake

Plaintiff alleged that defendants ARUS Gretchen Walters and ARUS Deborah Drake caused him mental anguish. Specifically, plaintiff alleges: that his mattress and pillow had defective coverings; that plaintiff was told he would get a new mattress; that when the new mattresses arrived, he did not receive one; and that when he filed a grievance, he received a new mattress but never received a new pillow. Compl. at ¶¶ 35-37. Plaintiff alleged that he was subjected to "mental anguish" and "wanton infliction unto [his] health by putting his life and future health at risk by not

10

insuring his safety and his safe living conditions, when Defendants knowingly made Plaintiff sleep on an infected mattress that could contain and most likely did contain contagious and infectious disease that could have been life threatening, such as A.I.D.S., MIRSA, T.B., Scabbies, and/or various others that are transmitted through body fluids. . . " *Id.* at ¶ 37.

The Eighth Amendment protects prisoners from "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). However, a condition of confinement does not violate the Eighth Amendment where the prisoner suffered no actu, andl injury and the threat of injury to him in the future is wholly speculative. *See Williams v. Jabe*, No. 90-1390 (Nov. 13, 1990). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (internal citations and quotation marks omitted). *See, e.g, Ballew v. Black*, No. 06-cv-70, 2007 WL 914181 at *4 (E.D. Ky. March 23, 2007) ("Unless a person has experienced an actual injury, as opposed to a speculative claim of injury, the person is without standing to assert a civil rights claim").

Plaintiff's Eighth Amendment claim is based upon his speculation that the old mattress and pillow *could* have contained life threatening infectious diseases and bodily fluids. There is no evidence that the mattress and pillow actually contained any such hazards, or that plaintiff contracted any infectious disease. Plaintiff has neither alleged nor established that he

11

suffered any injury from his mattress and pillow. There is no Eighth Amendment claim against defendants Walters and Drake, and they are entitled to summary judgment on this claim.

### E. Defendant Bashore

Plaintiff alleges that on November 12, 2007, while housed at IBC, his severe testicular pain made his leg "give out," and caused him to fall from the top bunk. Compl. at ¶¶ 28, 50-51. As a result of this fall, plaintiff allegedly suffered injuries to his ankle and knee which were not treated until two weeks later. *Id.* at ¶ 51. Plaintiff alleged that RUO Terry Bashore violated his constitutional rights when she "refused to prepare an accident report so that Plaintiff could receive immediate medical attention." *Id.* Plaintiff filed a grievance in this matter, which the MDOC resolved by allowing the filing of an "unsigned" accident report which provided as follows:

> Prisoner alleges on 11/12/07 he fell off his bunk and injured his ankle. Prisoner states that injury occurred around 11 am [sic]. Prisoner states he reported injury to staff and was told to fill out a kite due to the alleged injury was non-life threatening [sic] in nature and did not require emergency medical attention. The alleged injury was not witnessed or observed by staff. This accident report is being filed as resolution to prisoners [sic] grievance.

Docket no. 1-2 at p. 23.

In her affidavit, RUO Bashore stated that she neither observed plaintiff's accident, nor was presented with any evidence that plaintiff fell out bed, was limping or appeared to be in "excruciating" pain. Bashore Aff. at ¶ 4 (docket no. 59). RUO Bashore did not recall receiving a request from plaintiff for the preparation of an accident report. *Id.* at ¶ 3. IBC medical records reflect that on November 15, 2007, plaintiff was examined by a nurse practitioner after reporting to have fallen off of his bunk "yesterday" (i.e., two days later than alleged in the complaint). *Id.* at exh. 1-A. According to these records, plaintiff stated that he twisted his ankle and hit his knee, and that although he knew his ankle was broken, no one would call health care. *Id.* Plaintiff reported chronic

12

testicular pain, but stated that he had not been taking the prescribed tylenol or motrin because these are "for minor pain." *Id.* The nurse practitioner assessed plaintiff as exhibiting "[d]rug seeking behavior." *Id.* Although both the ankle and knee appeared to have only "a slight bruise," the nurse practitioner ordered x-rays of both joints. *Id.* The x-rays, taken on November 20, 2007, were negative. *Id.*

Defendant Bashore contends that plaintiff failed to demonstrate a sufficiently serious medical need to trigger an Eighth Amendment violation. The court agrees. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (citation omitted). Where a prisoner's affliction is seemingly minor or non-obvious, "medical proof is necessary to assess whether the delay caused a serious medical injury." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004). Here, plaintiff has produced no medical proof that the delay in treatment caused a serious medical injury. The undisputed medical record establishes that plaintiff saw a medical provider within either one day or three days after he fell from the bunk, that the alleged injuries appeared to be nothing more than "a slight bruise," that x-rays were ordered, and that the x-rays were negative. In summary, there is no evidence that plaintiff suffered a "serious" injury when he fell, or that he suffered a serious injury due to the alleged delay in medical treatment. Accordingly, defendant RUO Bashore is entitled to summary judgment as to the Eighth Amendment claims alleged in Counts I and II.

### F. Defendant Avery

Plaintiff alleged that while housed at IBC, ARUS Larry Avery violated his Eighth Amendment rights. Specifically, plaintiff alleged that despite "having knowledge of Plaintiff's mental disabilities, Defendant Avery in a violent tone humiliated, degraded, verbally assaulted, and belittled Plaintiff in an abusive manner in front of many other prisoners." *Id.* at ¶ 57. Plaintiff's allegations fail to state a constitutional violation. The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson*, 503 U.S. at 5. However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Threats, verbal abuse and harassment are insufficient to state a § 1983 claim. *See Williams v. Gersbacker,* No. 93-1515, 1993 WL 430138 at *1 (6th Cir. Oct. 22, 1993); *Ivey*, 832 F.2d at 954-955. *See also Hartsfield v. Mayer,* No. 95-1411, 1996 WL 43541 *2 (6th Cir. Feb. 1, 1996) ("Allegations of verbal abuse and harassment by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude") (citation omitted); *Ishaaq v. Compton*, 900 F.Supp. 935, 944 (W.D. Tenn.1995) ("[m]ere verbal harassment does not inflict pain so as to amount to the 'obduracy and wantonness' required for a violation of the Cruel and Unusual Punishments Clause").

Plaintiff also claims that defendant Avery violated his rights under the equal protection clause. In order to maintain a Fourteenth Amendment Equal Protection claim, plaintiff must prove that he is a member in a protected class and that a state actor purposefully discriminated

against him because of his class membership. *See Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). Plaintiff has failed to allege any facts to demonstrate that he is a member of a protected class. To the extent that plaintiff alleged he is mentally ill, this condition does not place him in a suspect class for purposes of the equal protection clause. *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 445-46 (1985) (holding that the mentally retarded do not constitute a suspect class and stating in dicta that the mentally ill are not a suspect class); *Smith v. Fischer*, No. 9:07-cv-1264, 2009 WL 632890 at *10, fn. 29 (N.D. N.Y. March 9, 2009) ("sex offenders, the mentally ill, the mentally handicapped, and the indigent do not comprise a suspect class for Equal Protection purposes") (listing cases); "The mentally ill . . . are not a suspect or quasi-suspect class under the equal protection clause." *Torres-Caraballo v. Municipality of Yauco*, No. 07-1891, 2008 WL 2906759 (D. P.R. July 23, 2008). Accordingly, defendant Avery is entitled to summary judgment on the Eighth and Fourteenth Amendment claims asserted in Counts I, II and V.

### G. Count III (Access to the court)

"It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution," *Graham v. National Collegiate Athletic Association*, 804 F.2d 953, 959 (6th Cir.1986), which arises from the First and Fourteenth Amendments, *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The Constitution also ensures that access to the courts will be "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Defendants seek summary judgment on the basis that plaintiff has not demonstrated actual injury from their actions. The court concurs with this analysis. . To state a claim for interference with access to the courts, a prisoner must show actual injury connected to the pursuit of a non-frivolous legal claims challenging their convictions or conditions of confinement. *Lewis*, 518 U.S. at 355-56; *Harbin-Bey v. Rutter*, 420

15

F.3d 571, 578 (6th Cir. 2005). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578.

In Count III, plaintiff has alleged that he is a "mentally disabled prisoner" and that defendants McKee, Carpenter, Johnson, Armstrong, Hull, Avery, Smith and Stoddard failed to ensure that his legal mail was immediately processed and that he received the assistance of an MDOC legal writer. Compl. at ¶¶ 85-91. Plaintiff, however, has failed to allege, or demonstrate, that defendants' actions caused any actual injury in a particular legal action. For this reason, defendants are entitled to summary judgment with respect to Count III.

### H. Count VII (Irreparable Injury)

Defendants contend that plaintiff's request for injunctive relief is moot. Plaintiffs complaints against defendants arose while he was confined at either Riverside Correctional Facility (RCF) or IBC. When he filed his complaint, plaintiff resided at the Ryan Road Correctional Facility in Detroit, Michigan. *See* docket no. 1. Plaintiff is currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan. *See* docket no. 57. A prisoner's claims for injunctive relief regarding the conditions of confinement at a particular correctional facility are rendered moot upon his transfer to another facility. *See Abdur-Rahman v. Michigan Department of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995) (plaintiff prisoner's suit for injunctive relief regarding conditions of confinement at the State Prison of Southern Michigan in Jackson, which named the MDOC Director as the defendant, was rendered moot when plaintiff was transferred to another prison). Because plaintiff has been transferred to a different facility, his claims for injunctive relief directed at the 20 defendants are rendered moot. Accordingly, Count VII should be dismissed as moot.

16

### IV. State law claims

Defendants' dispositive motions do not address plaintiff's state law claims brought under the Michigan Constitution Art. 1, §§ 16 and 17, and Michigan common law (i.e., intentional infliction of emotional distress in Count VI). With the exception of plaintiff's state law claims asserted against defendants Meno, Dawdy and Switzer in Count I (which plaintiff waived in his response), these state law claims remain pending against all defendants.

In this report, the undersigned has concluded that plaintiff's federal claims alleged against defendants Armstrong, McKee, Stoddard, Schooley, Johnson, Carpenter, Hull, Smith, Hunt, Walters, Drake, Bashore, Avery and Corning are without merit, and that the respective defendants are entitled to either summary judgment or dismissal. The only claims remaining against these 14 defendants involve alleged violations of Michigan state law. Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). The court exercised its supplemental jurisdiction over plaintiff's state law claims, because those claims were apparently intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claims against these 14 defendants, however, requires the court to re-examine the issue of supplemental jurisdiction with respect to the state law claims directed against them. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction

17

under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).

As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, plaintiff has filed an unwieldy action alleging dozens of state and federal claims against the twenty defendants. The Court has rejected plaintiff's federal claims as to defendants Armstrong, McKee, Stoddard, Schooley, Johnson, Carpenter, Hull, Smith, Hunt, Walters, Drake, Bashore, Avery and Corning. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims alleged against these 13 defendants.

Accordingly, pursuant to § 1367, the court should dismiss the state law claims asserted against defendants Armstrong, McKee, Stoddard, Schooley, Johnson, Carpenter, Hull, Smith, Hunt, Walters, Drake, Bashore, Avery and Corning.

**V.     Recommendation**

Accordingly, I respectfully recommend:

A.     That Dr. Steven Meno's motion to dismiss (docket no. 23) be **GRANTED** as to Count I and **DENIED** as to Count II.

B.     That John Dawdy and Marilyn Switzer's motion to dismiss (docket no. 37) be **GRANTED** as to Count I and **DENIED** as to Count II.

C.     That defendants' motion for summary judgment (docket no. 54) be resolved as follows:

1. That the motion be **GRANTED** as to all defendants with respect to the Fourteenth Amendment claim alleged in Count III;

2. That the motion be **GRANTED** as to all defendants with respect to Count VII;

3. That the motion be **GRANTED** as to defendants Armstrong, McKee, Stoddard, Schooley, Johnson, Carpenter, Hull, Smith, Hunt and Avery with respect to the Eighth Amendment claims alleged in Counts I, II, and V;

4. That the motion be **GRANTED** as to defendants Walters and Drake with respect to the Eighth Amendment claim alleged in Count IV; and,

5. That the motion be **GRANTED** as to defendant Bashore with respect to the Eighth Amendment claim alleged in Count I.

D. That Kevin Corning's motion to dismiss (docket no. 63) be **GRANTED** as to the Eighth Amendment claim alleged in Count I;

E. That all state law claims alleged against defendants Armstrong, McKee, Stoddard, Schooley, Johnson, Carpenter, Hull, Smith, Hunt, Walters, Drake, Bashore, Avery, and Corning be dismissed pursuant to 28 U.S.C. § 1367.

F. That defendants Armstrong, McKee, Stoddard, Schooley, Johnson, Carpenter, Hull, Smith, Hunt, Walters, Drake, Bashore, Avery and Corning be dismissed from this action.

G. That "R. Meno" be stricken as a defendant in this action.

Dated: July 23, 2009                                        /s/ Hugh W. Brenneman, Jr.
                                                            HUGH W. BRENNEMAN, JR.
                                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).